The STATE of Ohio, Appellee,

v.

SYX, Appellant.

[Cite as State v. Syx, 190 Ohio App.3d 845, 2010-Ohio-5880.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23589.

Decided Dec. 3, 2010.

846

John Danish, Dayton Law Director, Stephanie Cook, and Amy Musto, Assistant City Prosecutors, for appellee.

Larry J. Denny and Mark A. Deters, for appellant.

Fain, Judge.

{¶ 1} Defendant-appellant, John Syx, appeals from his conviction and sentence for operating a vehicle under the influence ("OVI"), running a red light, and failure to signal. Syx argues that the trial court erred in refusing to allow him to cross-examine Officer Hooper regarding field sobriety tests. He maintains that he was denied his right to confrontation of the witnesses against him, resulting in an insufficient foundation being laid for the admission of the blood-test results, when neither the phlebotomist nor the toxicologist was called to testify at trial. He concludes, therefore, that the blood-test results should have been excluded and Dr. Marinetti should not have been allowed to testify about the typical effects of that level of blood-alcohol concentration. Syx argues that the trial court erred in refusing to allow his expert witness to testify, and he insists that as a result of cumulative evidentiary errors, he was denied his right to a fair trial.

{¶ 2} We conclude that the trial court did not abuse its discretion in refusing to allow Syx to cross-examine Officer Hooper regarding his training on how to conduct field sobriety testing. We conclude that the blood-test results were not properly admitted, and without those results in evidence, Dr. Marinetti could not testify about the general effects of that level of blood-alcohol concentration in one's bloodstream. We also conclude that the trial court abused its discretion in refusing to allow expert testimony regarding Syx's speed because excessive speed is evidence that would support an inference of driving under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a). Syx's argument that he was deprived of a fair trial is rendered moot by our finding of prejudicial error in regard to his second and fourth assignments of error.

{¶ 3} Because we sustain three of Syx's assignments of error, the judgment of the trial court is reversed, and this cause is remanded for further proceedings in accordance with this opinion.

I

{¶ 4} One evening in April 2008, Dayton Police Officers Hooper and Lally were in the parking lot of the police station on Wayne Avenue when they heard the

loud sound of an engine racing past the fire station next door. The vehicle was a yellow Corvette, which they later found out Syx was driving. The officers estimated that Syx was traveling at 80 miles per hour as he passed them. The speed limit on Wayne Avenue at that location is 35 miles per hour.

{¶ 5} The officers pulled onto Wayne Avenue and followed Syx. After coming out of a curve near Wilmington Avenue, the officers paced Syx traveling at 60 miles per hour. Syx ran through a red light, and he failed to signal when changing lanes. The officers activated their lights and siren. After several blocks, Syx slowed and turned onto a side street, again without signaling, before he stopped.

{¶ 6} When the officers approached Syx, they saw that his face was very flushed, and his eyes were glossy, watery, and bloodshot. Officer Hooper smelled alcohol on Syx's breath. Syx appeared to have difficulty finding his wallet, and he fumbled awkwardly for his driver's license. The officers noticed that Syx's speech was slurred. Officer Hooper asked Syx to step out of his car. Syx appeared to have trouble finding the door handle. Officer Hooper opened the car door, and Syx stepped out. As the officers began to lead Syx to the cruiser, they noticed that he was staggering and directed him onto the sidewalk instead. Throughout the encounter, Syx repeatedly asked Hooper whether he knew Syx's son, who was a firefighter at the fire station he had just passed.

{¶ 7} Officer Hooper asked Syx whether he had any illness or injury, which Syx denied, but Syx admitted to having had two drinks. Hooper testified that as Syx walked nine paces away and back, Syx staggered and lost his balance. When Syx stood on one leg, he kept swaying. Hooper told Syx that he was under arrest for OVI, and Syx consented to having his blood drawn. His blood contained 0.11 percent alcohol.

{¶ 8} Syx was charged with OVI in violation of R.C. 4511.19(A)(1)(a), and he was cited for three traffic violations: running a red light, failure to signal, and failure to wear a seat belt. Later, Syx was also charged with OVI (prohibited concentration of blood alcohol) in violation of R.C. 4511.19(A)(1)(b), arising out of the same incident, but that charge was dismissed on speedy-trial grounds. Syx filed a motion to suppress, which the trial court granted in part, suppressing the results of the field sobriety tests. A jury found Syx guilty of OVI, while the trial court found him guilty of running a red light and failure to signal, but not guilty of failure to wear a seat belt. From his conviction and sentence, Syx appeals.

II

{¶ 9} In Syx's first four assignments of error, he argues that the trial court erred in making various evidentiary rulings. The admission or exclusion of

evidence lies within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. *State v. Brown*, Montgomery App. No. 21540, 2007-Ohio-2098, 2007 WL 1288574, ¶ 24, citing *State v. Haines*, 112 Ohio St.3d 393, 2006-Ohio-6711, 860 N.E.2d 91, ¶ 50; *State v. Jones* (2000), 90 Ohio St.3d 403, 414, 739 N.E.2d 300. The abuse-of-discretion standard is defined as "[a]n appellate court's standard for reviewing a decision that is asserted to be grossly unsound, unreasonable, illegal, or unsupported by the evidence." *State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, 932 N.E.2d 345, ¶ 18, quoting Black's Law Dictionary (8th Ed.2004) 11.

## III

{¶ 10} Syx's first assignment of error is as follows:

{¶ 11} "The trial court erred by prohibiting appellant from cross-examining Officer Hooper about the field sobriety test."

{¶ 12} In his first assignment of error, Syx maintains that the trial court should have allowed him to cross-examine Officer Hooper regarding his training in how to conduct field sobriety testing. We disagree.

{¶ 13} Syx filed a motion to suppress the results of the field sobriety tests. During the suppression hearing, Officer Hooper testified that standards established by the National Highway Traffic Safety Administration ("NHTSA") for field sobriety testing were not yet in existence when he attended the Dayton Police Academy 23 years ago. And he had not attended any training updates in the area of field sobriety testing since his initial training at the Academy. Therefore, the trial court properly granted the motion to suppress the test results pursuant to R.C. 4511.19(D)(4)(b), because the state failed to establish that the tests were conducted in compliance with the standards established by NHTSA.

{¶ 14} Nevertheless, even when the results of field sobriety testing are suppressed, an officer may testify at trial, pursuant to Evid.R. 701, regarding his layman's observations of defendant's performance of field sobriety tests. *State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37, 801 N.E.2d 446, ¶ 15. See also *State v. Wells*, Montgomery App. No. 20798, 2005-Ohio-5008, 2005 WL 2327125, ¶ 37–43; *State v. Hall*, Greene App. No. 04CA86, 2005-Ohio-4526, 2005 WL 2087754, ¶ 25; *State v. Terry*, Greene App. No. 04CA63, 2004-Ohio-7257, 2004 WL 3561243, ¶ 26; and *State v. Faul*, Montgomery App. No. 20579, 2004-Ohio-6225, 2004 WL 2659123, ¶ 26, all citing *Schmitt*. "It is generally accepted that virtually any lay witness, including a police officer, may testify as to whether an individual appears intoxicated." (Citations omitted.) *Schmitt* at ¶ 12. Therefore, there is no reason to treat an officer's observations of a defendant's performance on those tests differently from his testimony regarding other indicia of intoxication, such as

bloodshot eyes, slurred speech, and an odor of alcohol. Id. at ¶ 14. "Unlike the actual test results, which may be tainted [by the failure to follow NHTSA standards], the officer's testimony is based upon his or her firsthand observation of the defendant's conduct and appearance." Id. at ¶ 15.

{¶ 15} When Officer Hooper testified at trial about Syx's performance, he avoided any direct reference to field sobriety testing, and he never attempted to evaluate Syx's performance; he merely described what he observed. Officer Hooper testified, "I just observed him do certain things and during my observation I just took note of what he was doing. * * * I just observed him walking nine paces down and back up. * * * I observed him holding his leg up and just observed him holding his leg up one leg at a time." Officer Hooper testified that while observing this behavior, he saw Syx stumble, stagger, and sway.

{¶ 16} At the conclusion of this portion of Officer Hooper's testimony, the prosecutor asked, "And based on your training and experience and those observations what conclusions did you come to based on that observation?" This is the only time Officer Hooper's training was referred to in the context of field sobriety testing on direct examination. While the question should not have included any reference to Officer's Hooper's training, we do not conclude that this single reference constituted prejudicial error.

{¶ 17} Other incidents referred to by Syx in his brief reveal that the objectionable references were made on several occasions by Syx himself. From the beginning of his cross-examination, Syx repeatedly sought to characterize Officer Hooper's lay observations as field sobriety tests. The state properly objected, and the trial court sustained the objections.

{¶ 18} In *Schmitt*, the court points out that a defendant "will have the opportunity to cross-examine the officer to point out any inaccuracies and weaknesses." Id. at ¶ 15. See also *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155. However, the defendant on cross-examination cannot seek to elicit improper testimony about field sobriety testing in order to then attack the witness's credibility with regard to how he conducted that testing. The field sobriety tests having been suppressed, it was improper for Syx to ask Officer Hooper about his training in regards to that testing. Syx should have limited his cross-examination to Officer Hooper's lay observations of Syx's behavior.

{¶ 19} Syx's first assignment of error is overruled.

IV

{¶ 20} Syx's second assignment of error is as follows:

{¶ 21} "The trial court erred by admitting the blood test result without requiring appellee to establish a proper foundation first."

{¶ 22} In his Second Assignment of Error, Syx argues that he was denied his constitutional right to confront witnesses against him when the state failed to call the phlebotomist who drew his blood sample and the toxicologist who tested the sample to testify at trial in order to lay a foundation for the admission of blood-alcohol-test results, despite his objections to the lack of their testimony. The state, on the other hand, insists that neither witness was necessary at trial because both had testified at the hearing on Syx's motion to suppress, and the issue of the test results had been determined to have been admissible evidence at that time. We conclude that although the trial court found in its suppression ruling that the test results were admissible, the prosecution retains the burden of establishing a foundation for the admissibility of the test results at trial, and Syx has a constitutional right to cross-examine the witnesses in order to challenge their credibility, the methodology employed, and any other factors that might affect the weight to be given to the test results. The state's failure to call these witnesses at trial deprived Syx of his constitutional right to confront those witnesses.

{¶ 23} The Sixth Amendment's Confrontation Clause provides, "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." The United States Supreme Court has held that the right to confrontation is violated when an out-of-court statement that is testimonial nature is admitted into evidence without the defendants having had the opportunity to cross-examine the declarant. *Crawford v. Washington* (2004), 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177. Although the court explicitly left open a precise definition of what is "testimonial," it stated that the core class of testimonial statements includes statements "that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id. at 52, 124 S.Ct. 1354, 158 L.Ed.2d 177. Accord *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, paragraph one of the syllabus. "In determining whether a statement is testimonial for Confrontation Clause purposes, courts should focus on the expectation of the declarant at the time of making the statement." Id. at paragraph two of the syllabus. Thus, the primary question we must consider is whether the results of a blood-alcohol test are testimonial in nature.

{¶ 24} More than 30 years ago, the United States Supreme Court held that police do not violate the defendant's Fifth Amendment right against self-incrimination by requesting a blood test upon making an arrest for driving under the influence of alcohol, and therefore, there is no right to consult an attorney prior to deciding whether to submit to testing. *Schmerber v. California* (1966), 384

U.S. 757, 765, 86 S.Ct. 1826, 16 L.Ed.2d 908. One basis for that decision was the court's conclusion that the results of a test of a defendant's body fluids are nontestimonial in nature, in the sense that they do not constitute out-of-court "testimony" by the defendant whose body fluids have been tested. Id. While the holding of *Schmerber* remains intact, the court's more recent decision in *Melendez–Diaz v. Massachusetts* (2009), —— U.S. ——, 129 S.Ct. 2527, 174 L.Ed.2d 314, calls into doubt that the nontestimonial nature of a defendant's body fluids applies to a test result derived from those same body fluids. In other words, the body fluids themselves do not constitute compelled testimony for Fifth Amendment purposes, but the results of a test of those same body fluids, and statements by the persons conducting the testing, are testimonial in nature for purposes of the Sixth Amendment's confrontation clause.

{¶ 25} In *Melendez–Diaz,* the court considered the admissibility of a lab analyst's affidavit regarding his testing of suspected narcotics, absent that analyst's testimony at trial, as provided for under Massachusetts law. The court explained that the lab analyst's affidavit is not a business record pursuant to Fed.R.Evid. 803(6), because the record is not kept in the regular course of business, but is created solely for the purpose of evidence at trial. Id. at ——, 129 S.Ct. at 2538, 174 L.Ed.2d 314. The court concluded that the affidavit is testimonial in nature, and the defendant, therefore, has a constitutional right to cross-examine the analyst who conducted the testing and compiled the report. Id.

{¶ 26} In *State v. Crager,* 116 Ohio St.3d 369, 2007-Ohio-6840, 879 N.E.2d 745, paragraphs one and two of the syllabus, the Supreme Court of Ohio held that because scientific testing records are not testimonial under *Crawford,* "[a] criminal defendant's constitutional right to confrontation is not violated when a qualified expert DNA analyst testifies at trial in place of the analyst DNA who actually conducted the testing." The United States Supreme Court vacated that judgment and remanded the case to the Supreme Court of Ohio for further consideration in light of *Melendez–Diaz. Crager v. Ohio* (2009), —— U.S. ——, 129 S.Ct. 2856, 174 L.Ed.2d 598. Because the trial court had not addressed the admissibility of the evidence in light of *Melendez–Diaz,* the Supreme Court of Ohio vacated the defendant's conviction and remanded the case to the trial court. *State v. Crager,* 123 Ohio St.3d 1210, 2009-Ohio-4760, 914 N.E.2d 1055.

{¶ 27} Dr. Marinetti is the Chief Forensic Toxicologist of the Miami Valley Regional Crime Lab. She did not conduct the testing on Syx's blood sample; she is the direct supervisor of the toxicologist who did. Thus, Dr. Marinetti did not have any first-hand knowledge of the blood draw, its testing, or its results. Nor did Officer Hooper, who played no role in the testing. Although Officer Hooper was present for the blood draw, he was unable to explain what the phlebotomist's

procedure was in drawing the blood sample. Without the testimony of witnesses with first-hand knowledge, the test results should not have been admitted into evidence.

{¶ 28} To the extent the state argues that Syx could have subpoenaed the witnesses himself, we point out that the United States Supreme Court has found that a defendant's subpoena power is no substitute for the right of confrontation. *Melendez–Diaz* at ——, 129 S.Ct. at 2540, 174 L.Ed.2d 314. "[T]he Confrontation Clause imposes a burden on the prosecution to present its witnesses, not on the defendant to bring those adverse witnesses into court." Id.

{¶ 29} Although we conclude that Syx was denied his constitutional right to confront the witnesses against him as to the blood-test results, we recognize that the proper scope of his cross-examination of those witnesses would be limited. "An assertion that test results are inadmissible in a criminal trial because the state failed to substantially comply with methods approved by the Director of Health for determining the concentration of alcohol in bodily fluids must be raised through a pretrial motion to suppress." *State v. Edwards,* 107 Ohio St.3d 169, 2005-Ohio-6180, 837 N.E.2d 752, paragraph one of the syllabus. (*State v. French* (1995), 72 Ohio St.3d 446, 650 N.E.2d 887, approved and followed.) Syx filed a motion to suppress the results of the blood test, which the trial court overruled, finding that the testing was performed in compliance with the approved methods. Because finality attaches to a ruling of substantial compliance on a motion to suppress, a defendant may not challenge the admissibility of the test results at trial by arguing that the state failed to comply with the rules. Id. at ¶ 12, citing *French,* 72 Ohio St.3d at 449, 650 N.E.2d 887. "[T]he issue whether '[t]he bodily substance withdrawn [was] analyzed in accordance with methods approved by the director of health,' R.C. 4511.19(D)(1), is not a jury question and is to be decided by the court prior to trial." Id. at ¶ 20.

{¶ 30} "This does not mean, however, that the defendant may not challenge the chemical test results at trial under the Rules of Evidence. Evidentiary objections challenging the competency, admissibility, relevancy, authenticity, and credibility of the chemical test results may still be raised." *French,* 72 Ohio St.3d at 452, 650 N.E.2d 887. Thus, Syx may challenge the results only on grounds other than that the results were not obtained in compliance with the established guidelines. *Edwards,* 107 Ohio St.3d 169, 2005-Ohio-6180, 837 N.E.2d 752, at ¶ 19. The scientific nature of the testing does not eliminate the defendant's right to confront the analysts who conducted the tests. *Melendez–Diaz,* —— U.S. at ——, 129 S.Ct. at 2536–2538, 174 L.Ed.2d 314. "Like expert witnesses generally, an analysts lack of proper training or deficiency in judgment

may be disclosed on cross-examination." Id. at ——, 129 S.Ct. at 2537, 174 L.Ed.2d 314.

{¶ 31} The state also argues that it was not required to call either the phlebotomist or the toxicologist because Syx failed to comply with the notice and demand requirements set out in R.C. 4511.19(E), which the state compares at length with 2925.51. We point out that on its face, R.C. 2925.51 is not applicable to any prosecutions under 4511.19. R.C. 2925.51(A) begins with the statement: "In any prosecution for a violation of this chapter or Chapter 3719 of the Revised Code." Thus, any reliance upon *State v. Pasqualone*, 121 Ohio St.3d 186, 2009-Ohio-315, 903 N.E.2d 270, which holds that a defendant may waive his right to confront a lab analyst by failing to demand, pursuant to R.C. 2925.51(C), that the analyst testify at trial, is misplaced.

{¶ 32} Furthermore, the notice and demand requirements of R.C. 4511.19(E) are not applicable to prosecutions under R.C. 4511.19(A)(1)(a), with which Syx was charged. That section is applicable only to prosecutions in "violation of division (A)(1)(b), (c), (d), (e), (f), (g), (h), (i), or (j) or (B)(1), (2), (3), or (4) of this section." R.C. 4511.19(E). The legislature having specifically omitted applicability of the notice and demand requirements set out in R.C. 4511.19(E) from prosecutions under subsection (A)(1)(a), we cannot rewrite the statute and impose those requirements by judicial fiat.

{¶ 33} Syx's second assignment of error is sustained.

## V

{¶ 34} Syx's third assignment of error is as follows:

{¶ 35} "The trial court erred by allowing Dr. Marinetti to testify to general symptoms of intoxication at [0.11] when there was not a blood test result that had been properly admitted."

{¶ 36} In his third assignment of error, Syx argues that because the blood-test result was not properly admitted, Dr. Marinetti should not have been allowed to testify regarding the general symptoms of intoxication for one whose blood tests at 0.11 percent. Because the blood-test results were not properly admitted into evidence, Dr. Marinetti's testimony should have been excluded.

{¶ 37} Evid.R. 702(B) permits expert-opinion testimony where "[t]he witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony." When the state seeks to present blood-test results for a defendant who is charged with OVI under R.C. 4511.19(A)(1)(a), blood-test results alone are of little use to the average juror. The state is required to offer expert testimony in order to aid the jury in understanding the significance of those results. *French*, 72 Ohio St.3d

446, 650 N.E.2d 887.  In this case, had the blood-test results been properly admitted, Dr. Marinetti's testimony would have been necessary and appropriate in order to help the jury understand the typical behavior of one whose blood tests at 0.11 percent alcohol.  Syx has not challenged Dr. Marinetti's qualifications as a toxicologist.  To the contrary, he stipulated to her qualifications.

{¶ 38} But an expert's opinion must be based upon facts or data "perceived by the expert or admitted in evidence at the hearing."  Evid.R. 703.  Because we have concluded, in response to Syx's second assignment of error, that the blood-alcohol test results were not properly admitted in this case, there was no proper foundation for Dr. Marinetti's testimony regarding the effects of this level of blood-alcohol in this case.

{¶ 39} (On remand, of course, it is possible that the state will obtain the proper admission of the blood-alcohol-test result, which would allow a duly qualified expert to testify concerning the effects of that concentration of alcohol in the bloodstream.)

{¶ 40} Syx's third assignment of error is sustained.

VI

{¶ 41} Syx's fourth assignment of error is as follows:

{¶ 42} "The trial court erred by excluding appellant's relevant expert witness."

{¶ 43} In his fourth assignment of error, Syx contends that he should have been allowed to call Lee Edwards as an expert witness, who would have testified regarding the allegedly excessive speed of Syx's car in order to impeach the officers' testimony regarding their estimates of his speed.  Because driving 80 miles per hour in a 35-mile-per-hour zone supports a reasonable inference of impairment, this testimony was material to the OVI charge, and we conclude that the trial court abused its discretion in refusing to allow Edwards to testify to rebut the officers' testimony.

{¶ 44} This is not a case of "nominal" speeding, which when combined with only some odor of alcohol on the person of the driver does not provide probable cause for an OVI arrest.  *State v. Taylor* (1981), 3 Ohio App.3d 197, 198, 3 OBR 224, 444 N.E.2d 481.  Instead, this is a case involving an allegation of excessive speeding.  Officers Hooper and Lally testified that Syx was driving at 80 miles per hour on a road with a posted legal limit of only 35 miles per hour.  Syx sought to attack the officers' credibility, in part, by offering an expert witness who would have testified that the officers' estimates of Syx's speed could not have been accurate.

{¶ 45} We have previously held that excessive speed is some evidence of OVI. See, e.g., *State v. Gower*, Darke App. No. 1616, 2003-Ohio-5403, 2003 WL 22318634, ¶ 30. Because the allegation of Syx's excessive speed was one of the factors to which the state could point as evidence of Syx's OVI violation, Syx was entitled to rebut the officers' estimates of his excessive speed, including doing so with the testimony of an expert witness. The trial court abused its discretion in refusing to allow this testimony.

{¶ 46} Syx's fourth assignment of error is sustained.

## VII

{¶ 47} Syx's fifth assignment of error is as follows:

{¶ 48} "Appellant did not receive a fair trial due to the trial court's cumulative evidentiary errors."

{¶ 49} Finally, in his fifth assignment of error, Syx insists that the cumulative effect of the trial court's allegedly erroneous evidentiary rulings denied him his right to a fair trial. We have found in connection with Syx's second, third, and fourth assignments of error errors sufficiently prejudicial to merit reversal. Therefore, Syx's fifth assignment of Error is overruled as moot.

## VII

{¶ 50} Syx's second, third, and fourth assignments of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

DONOVAN, P.J., and BROGAN, J., concur.