[Cite as *State v. Frangella*, 2012-Ohio-1863.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellee | Hon. Sheila G. Farmer, J. |
| | Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 11 CA 43 |
| JAMES FRANGELLA | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal Appeal from the Court of Common
                              Pleas, Case No.  2010 CR 526D


JUDGMENT:                     Affirmed


DATE OF JUDGMENT ENTRY:       April 25, 2012


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JAMES J. MAYER, JR.                       PAUL L. WALLACE
PROSECUTING ATTORNEY                      PAUL L. WALLACE CO., LPA
DANIEL J. BENOIT                          171 East Livingston Avenue
ASSISTANT PROSECUTOR                      Columbus, Ohio  43215
38 South Park Street
Mansfield, Ohio  44902

*Wise, J.*

{¶1} Appellant James Frangella appeals his conviction, in the Court of Common Pleas, Richland County, for OMVI, aggravated vehicular assault, and other offenses. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

{¶2} On January 25, 2010, at about 8:30 PM, Appellant Frangella was driving his Nissan pickup truck eastbound on Route 330 in Richland County. The roads in the area at that time were snow-covered and slippery. As appellant's truck rounded a slight curve near the intersection of Snodgrass Road, it went left of the center line and struck an oncoming Chevrolet Cavalier with four occupants: Troy Gilliland, Robert Rahm, Brian Hauck and Stanley Rupinski. These four men, as well as appellant, were injured in the collision. They were thereafter transported by paramedics to MedCentral Health Center in Mansfield.

{¶3} Trooper James Baker of the Ohio State Highway Patrol arrived at the scene shortly after the collision took place. He began his investigation at the scene, noting among other things that the debris field from the vehicles and a gouge mark in the pavement were in the westbound lane of travel. Trooper Baker subsequently went to the hospital and interviewed the parties involved in the collision, including appellant. In talking with appellant about two hours after the crash, the trooper noticed an odor of alcoholic beverage, slurred speech, and glassy eyes. Trooper Baker also noticed that appellant seemed to be "holding his breath when he was talking." Tr. at 191. The trooper then went to his cruiser and obtained the forms for requesting a BAC test. When he returned, appellant had vomited on the floor. The trooper proceeded to request the

test, but appellant refused to do so. The trooper told appellant that since he was facing a felony, the blood draw would take place anyway. The trooper then had the blood drawn by a phlebotomist and sent to the state crime lab for testing.

{¶4} Those test results were suppressed by the trial court. The hospital laboratory records show blood test results, but the patient chart does not show that blood was taken. Appellant was released after several hours. Appellant appeared several weeks later at the Highway Patrol Office, where he was arrested. At that time, Trooper Baker read to him and asked him to sign the form regarding the refusal, with which he complied.

{¶5} In March 2010, appellant was indicted by the Richland County Grand Jury (case number 2010-CR-120D) on four felony counts of aggravated vehicular assault, two misdemeanor counts of OMVI, and one count of driving left of center. On March 25, 2010, appellant entered pleas of not guilty to all of these charges. On April 27, 2010, appellant, through counsel, filed a motion in limine and/or to suppress seeking to suppress the blood draw test results conducted by OSHP and MedCentral Mansfield and to suppress all statements made by appellant on the basis they were involuntary.

{¶6} On August 10, 2010, in case number 2010-CR-120D, the trial court issued an order suppressing the use of OSHP's blood test results. However, the blood test results from the hospital's self-initiated draw were not suppressed.

{¶7} The predecessor case, case number 2010-CR-120D, was dismissed on August 12, 2010, and appellant was re-indicted under case number 2010-CR-526D as follows: eight counts of aggravated vehicular assault (R.C. 2903.08(A)(1)(a) and 2903.08(A)(2)(b)), felonies of the third degree and the fourth degree; two counts of

operating a motor vehicle while under the influence of alcohol and/or drugs (R.C. 4511.19(A)(1)(a) and 4511.19(A)(1)(b)), misdemeanors of the first degree; and one count of driving left of center (R.C. 4511.25(A)), a minor misdemeanor. Appellant pled not guilty to all charges.

{¶8} On April 13, 2011, in response to a motion to reconsider filed by the State, the trial court issued an order affirming its earlier decision to exclude the OSHP-initiated blood draw on appellant.

{¶9} A jury trial commenced on April 14, 2011, following which appellant was found guilty of all counts in the indictment except count six (based on an alleged violation of R.C. 4511.19(A)(1)(b)), which was dismissed.

{¶10} A sentencing hearing was held on April 25, 2011, following which appellant was sentenced to a total of four years in prison.

{¶11} On May 3, 2011, appellant filed a notice of appeal. He herein raises the following seven Assignments of Error:

{¶12} "I. THE TRIAL COURT ERRED IN ADMITTING THE TESTIMONY OF DR. ROBERT FORNEY, THE STATE'S FORENSIC TOXICOLOGY EXPERT.

{¶13} "II. THE TRIAL COURT ERRED IN ADMITTING THE TESTIMONY OF DR. STEVEN GREGORY ESCUE, THE DEFENDANT'S TREATING PHYSICIAN AT THE HOSPITAL ON THE NIGHT OF THE ACCIDENT.

{¶14} "III. THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF THE REFUSAL BY DEFENDANT TO TAKE AN ALCOHOL TEST.

**{¶15}** "IV. THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF ALLEGED CELLULAR PHONE CONVERSATIONS OF DEFENDANT [AND] CALIBRATION LOGS OF THE HOSPITAL TESTING EQUIPMENT.

**{¶16}** "V. THE TRIAL COURT ERRED IN FAILING TO GRANT DEFENDANT'S MOTION FOR ACQUITTAL PURSUANT TO RULE 29 OF THE OHIO RULES OF CRIMINAL PROCEDURE AT THE CLOSE OF THE STATE'S CASE.

**{¶17}** "VI. THE APPELLANT WAS DEPRIVED OF A FAIR TRIAL AS A RESULT OF THE CUMULATIVE ERRORS WHICH OCCURRED AT TRIAL.

**{¶18}** "VII. THE COURT FAILED TO CONSIDER SENTENCING GUIDELINES IS (SIC) REQUIRED UNDER THE REVISED CODE IN SENTENCING DEFENDANT TO CONSECUTIVE TERMS."

I.

**{¶19}** In his First Assignment of Error, appellant contends the trial court erred in admitting the testimony of the State's forensic toxicology expert. We disagree.

**{¶20}** The admission or exclusion of relevant evidence rests in the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 180, 510 N.E.2d 343. As a general rule, all relevant evidence is admissible. Evid.R. 402; cf. Evid.R. 802. Our task is to look at the totality of the circumstances in the case sub judice, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in allowing or excluding the disputed evidence. *State v. Oman* (Feb. 14, 2000), Stark App.No. 1999CA00027.

**{¶21}** In *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, the United States Supreme Court held that under the Confrontation

Clause, "testimonial" statements of a witness who does not appear at trial may not be admitted or used against a criminal defendant unless the declarant is unavailable to testify and the defendant has had a prior opportunity for cross-examination. In *Melendez–Diaz v. Massachusetts* (2009), — U.S. —, 129 S.Ct. 2527, 174 L.Ed.2d 314, the United States Supreme Court, applying *Crawford*, concluded it was a violation of a defendant's right to confrontation in a drug trafficking case where a lab analyst's notarized certificates regarding the identity and weight of the substance at issue were admitted without affording the defendant an opportunity to cross-examine the lab analyst. See *State v. Monroe,* Cuyahoga App. No. 94768, 2011–Ohio–3045, ¶ 54.

**{¶22}** R.C. 4511.19(D)(1)(a) states as follows: "In any criminal prosecution or juvenile court proceeding for a violation of division (A)(1)(a) of this section or for an equivalent offense that is vehicle-related, the result of any test of any blood or urine *withdrawn and analyzed at any health care provider*, as defined in section 2317.02 of the Revised Code, may be admitted with expert testimony to be considered with any other relevant and competent evidence in determining the guilt or innocence of the defendant." (Emphasis added).

**{¶23}** In addition, Evid.R. 702 reads as follows:

**{¶24}** "A witness may testify as an expert if all of the following apply:

**{¶25}** "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

**{¶26}** (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

**{¶27}** "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

**{¶28}** "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

**{¶29}** "(2) The design of the procedure, test, or experiment reliably implements the theory;

**{¶30}** "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."

**{¶31}** In the case sub judice, Dr. Robert Forney, the State's expert toxicologist, testified and submitted a report (State's Exhibit 50) concerning, inter alia, the tests results regarding the blood draw on appellant. Dr. Forney is the chief toxicologist at the Lucas County Coroner's Office is an associate professor at the University of Toledo Medical Center. Tr. at 325. At trial, Dr. Forney testified that based on his review of the accident report, the medical records, and the lab records, appellant was "significantly impaired at the time of the crash." Tr. at 357-358.

**{¶32}** Appellant essentially faults Dr. Forney's testimony as simply based on a laboratory report and not being based on a personal observation of the blood draw or the expert's own tests on the sample. Appellant simultaneously emphasizes that the testifying lab supervisor, Julie Wilson, had no direct involvement with the blood sample reviewed by Dr. Forney, and that the emergency room nurse manager, Angela Anderson, offered no specific knowledge concerning the sample. Appellant directs us to

*State v. Syx*, 190 Ohio App.3d 845, 2010-Ohio-5880, wherein the Second District Court of Appeals concluded that a defendant in an OMVI case was denied his constitutional right to confront witnesses against him when the State failed to call as trial witnesses the phlebotomist who made the blood draw and the toxicologist who tested the sample. Id. at ¶ 22. Appellant finally maintains that the State did not show, via Dr. Forney, that the blood draw and corresponding testing was done in compliance with a known standard pursuant to the requirements of Evid.R. 702.

**{¶33}** We note that *Syx, supra*, did not involve a "health care provider" blood draw under R.C. 4511.19(D)(1)(a), and is thus distinguishable from the circumstances of the case *sub judice*. Upon review, we find appellant's present challenges to Dr. Forney go to weight and credibility, rather than to admissibility. The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *See, e.g.*, *State v. Jamison* (1990), 49 Ohio St.3d 182, 552 N.E.2d 180. As such, we are unpersuaded that the trial court abused its discretion or violated appellant's right to confrontation by allowing Dr. Forney's testimony.

**{¶34}** Appellant's First Assignment of Error is therefore overruled.

II.

**{¶35}** In his Second Assignment of Error, appellant contends the trial court erred in admitting the testimony of the MedCentral physician, Dr. Escue, who treated appellant on the night of the accident. We disagree.

**{¶36}** R.C 2317.02(B)(1) states that "[t]he following persons shall not testify in certain respects: *** A physician or a dentist concerning a communication made to the physician or dentist by a patient in that relation or the physician's or dentist's advice to a

patient, except as otherwise provided in this division, division (B)(2), and division (B)(3) of this section, and except that, if the patient is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the physician may be compelled to testify on the same subject."

**{¶37}** However, R.C. 2317.02(B)(1)(c) states that "[t]he testimonial privilege established under this division does not apply, and a physician or dentist may testify or may be compelled to testify, *** [i]n any criminal action concerning any test or the results of any test that determines the presence or concentration of alcohol, a drug of abuse, a combination of them, a controlled substance, or a metabolite of a controlled substance in the patient's whole blood, blood serum or plasma, breath, urine, or other bodily substance at any time relevant to the criminal offense in question."

**{¶38}** In the case sub judice, Dr. Steven Escue, the emergency room physician, testified over defense objection that appellant's diagnosis included "alcohol intoxication," as well as contusions, abrasions, and back strain. Tr. at 214, 221-222. The findings of appellant's medical blood draw had been provided to the doctor, in order to allow for appellant's treatment. Appellant first contends that Dr. Escue thus testified beyond the scope of the R.C. 2317.02(B)(1)(c) privilege. However, we are unpersuaded that a definitive "communication" was improperly implicated via the doctor's testimony. Dr. Escue's testimony included what test was ordered, why the test was ordered, and his own observations made without even speaking with appellant. We are thus unable to conclude that the testimony of Dr. Escue violated the rules of privilege.

**{¶39}** Appellant secondly contends that Dr. Escue was essentially used as an expert witness, and thus the defense should have been supplied with a written report of

expert testimony prior to trial. Crim.R. 16(K) states as follows: "An expert witness for either side shall prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications. The written report and summary of qualifications shall be subject to disclosure under this rule no later than twenty-one days prior to trial, which period may be modified by the court for good cause shown, which does not prejudice any other party. Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial."

**{¶40}** In the case sub judice, the State does not dispute that there was no formal written report as to Dr. Escue. However, the State responds that as appellant had the medical records that Dr. Escue relied upon during his testimony, there was no need for a written report. However, we need not dwell on this issue, as we are unpersuaded that Dr. Escue was actually testifying as an expert. "It is well established that treating physicians can be called at trial to testify as viewers of their patients' physical condition and not as experts retained in anticipation of litigation." *Henry v. Richardson*, 193 Ohio App.3d 375, 951 N.E.2d 1123, 2011-Ohio-2098, ¶ 33, citing *Fischer v. Dairy Mart Convenience Stores, Inc.* (1991), 77 Ohio App.3d 543, 602 N.E.2d 1204. Even if we assume *arguendo* that Dr. Escue had been functioning as an expert witness, we have recognized that Crim.R. 16(K) is subject to a "harmless error" analysis. See *State v. Lewers*, Stark App.No. 2009-CA-00289, 2010-Ohio-5336, ¶ 125-¶ 128. In the case sub judice, particularly in light of the aforementioned testimony of Dr. Forney and Trooper Baker, we would find the lack of Dr. Escue's formal report to be harmless beyond a reasonable doubt.

{¶41} Appellant's Second Assignment of Error is overruled.

III.

{¶42} In his Third Assignment of Error, appellant contends the trial court erred in admitting evidence of his refusal to permit a BAC test at the hospital. We disagree.

{¶43} R.C. 4511.191(A)(2) states in pertinent part as follows: "Any person who operates a vehicle * * * upon a highway or any public or private property used by the public for vehicular travel or parking within this state or who is in physical control of a vehicle * * * shall be deemed to have given consent to a chemical test or tests of the person's whole blood, blood serum or plasma, breath, or urine to determine the alcohol, drug of abuse, controlled substance, metabolite of a controlled substance, or combination content of the person's whole blood, blood serum or plasma, breath, or urine if arrested for a violation of division (A) or (B) of section 4511.19 of the Revised Code, section 4511.194 of the Revised Code or a substantially equivalent municipal ordinance, or a municipal OVI ordinance."

{¶44} This Court has applied the Ohio Supreme Court's determination that evidence regarding a refusal to submit to a breath or blood test is admissible at trial. See *State v. Denney*, Fairfield App.No. 03 CA 62, ¶ 24, citing *Maumee v. Anistik,* 69 Ohio St.3d 339*,* 1994-Ohio-157. We note the *Anistik* case, which specifically deals with the proper jury instruction to be given where evidence is adduced that a defendant has refused to submit to a breath test, involved a driver who had been arrested for suspected DUI. Appellant herein proposes that *Anistik*, and the jury instruction created within that case, does not apply to his refusal at the hospital, as he was not under arrest at the time. However, we find the Ohio Supreme Court's earlier ruling in *City of*

*Westerville v. Cunningham* (1968), 15 Ohio St. 2d 121, 239 N.E.2d 40, which has not been overturned by *Anistik*, allows for the admission of such evidence without regard to the defendant's arrest status at the time.

{¶45} Upon review, we hold the trial court did not abuse its discretion in allowing the BAC blood draw refusal into evidence, even though the trial court, in so doing, had reconsidered its earlier pre-trial ruling on that issue.

{¶46} Appellant's Third Assignment of Error is overruled.

IV.

{¶47} In his Fourth Assignment of Error, appellant contends the trial court erred in admitting evidence of certain cell phone records and calibration logs. We disagree.

{¶48} Crim.R. 16(B)(1)(f) reads: "Upon motion of the defendant before trial the court shall order the prosecuting attorney to disclose to counsel for the defendant all evidence, known or which may become known to the prosecuting attorney, favorable to the defendant and material either to guilt or punishment. * * *."

{¶49} The United States Supreme Court has recognized that the Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense. See *United States v. Bagley* (1985), 473 U.S. 667, 675, 105 S.Ct. 3375, 87 L.Ed.2d 481. A trial court has discretion to determine what sanction is appropriate when the State fails to disclose discoverable material. *State v. Wiles* (1991), 59 Ohio St.3d 71, 78, 571 N.E.2d 97; *State v. Parson* (1983), 6 Ohio St.3d 442, 445, 453 N.E.2d 689.

{¶50} Appellant's specific contention is based on cell phone records, utilized to show appellant was on his phone shortly before the time of the crash, which records

were not disclosed to the defense until a week before trial. Appellant also challenges the hospital's calibration logs, which were referenced by the laboratory supervisor and the State's forensic expert in their testimony. Upon review of the entire record, we find appellant has failed to demonstrate the existence of an abuse of discretion in the court's decision to allow the trial to proceed and denying appellant's motion to exclude evidence based on the State's last-minute supplementation of the records-based evidence.

{¶51} Accordingly, appellant's Fourth Assignment of Error is overruled.

V.

{¶52} In his Fifth Assignment of Error, appellant contends the trial court erred in declining to grant his motion for acquittal under Crim.R. 29. We disagree.

{¶53} An appellate court reviews a denial of a Crim.R. 29 motion for acquittal using the same standard used to review a sufficiency of the evidence claim. See *State v. Carter* (1995), 72 Ohio St.3d 545, 553, 651 N.E.2d 965, 1995-Ohio-104. Thus, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶54} Appellant focuses on his convictions for aggravated vehicular assault under R.C. 2903.08(A)(1)(a) and (A)(2)(b), which state as follows: "No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall cause serious physical harm to another person or another's unborn in any of the following ways:

**{¶55}** "(1)(a) As the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance ***.

**{¶56}** " ***

**{¶57}** "(2) In one of the following ways:

**{¶58}** " ***

**{¶59}** "(b) Recklessly."

**{¶60}** The definition of "recklessness" is located in R.C. 2901.22(C), which states:

**{¶61}** "(C) A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

**{¶62}** Appellant herein emphasizes that the weather conditions on the day of the accident were snowy and slippery, and that the trooper's testimony and report give no specific indication that appellant was speeding or driving recklessly. Appellant thus maintains that the State failed to prove that the collision was the proximate result of his OMVI violation or reckless driving. However, as previously referenced herein, the record contains numerous instances of evidentiary support for the allegation that appellant was intoxicated at the time of the collision, and the State also provided expert testimony as to the effects of alcohol on a driver's motor skills. The jury also heard testimony from four of the other car's occupants, Mr. Rahm, Mr. Hauck, Mr. Rupinski, and Mr. Gilliland

(the driver). Rahm and Gilliland both recalled seeing appellant's truck weave across the center line, correct itself, and then re-cross the center line just prior to the head-on collision. See Tr. at 154, 419.

**{¶63}** Thus, upon review of the record and transcript in a light most favorable to the prosecution, we find that a reasonable finder of fact could have found the elements of aggravated vehicular assault, based both on OMVI and reckless driving, beyond a reasonable doubt.

**{¶64}** Appellant's Fifth Assignment of Error is overruled.

VI.

**{¶65}** In his Sixth Assignment of Error, appellant contends he was deprived of a fair trial based on the existence of cumulative error. We disagree.

**{¶66}** The doctrine of cumulative error provides that a conviction will be reversed where the cumulative effect of evidentiary errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not singularly constitute cause for reversal. *State v. DeMarco* (1987), 31 Ohio St.3d 191, 509 N.E.2d 1256, paragraph two of the syllabus.

**{¶67}** In support of his argument, appellant redirects us to several of the issues referenced earlier in this appeal, including late discovery regarding phone records and calibration logs, medical privilege issues, and the ruling on appellant's test refusal. Notwithstanding this Court's past reluctance to embrace cumulative error as grounds for reversal (see *State v. Mascarella* (July 6, 1995), Tuscarawas App.No. 93AP100075), we have reviewed the pertinent parts of the record in this matter, and we find reversible error has not been demonstrated on this basis.

**{¶68}** Appellant's Sixth Assignment of Error is therefore overruled.

VII.

**{¶69}** In his Seventh Assignment of Error, appellant contends the trial court erroneously failed to consider the purposes of felony sentencing under R.C. 2929.11 in ordering consecutive prison terms. We disagree.

**{¶70}** We note the Ohio Supreme Court's *Foster* decision [109 Ohio St.3d 1, 2006–Ohio–856] holds that judicial fact finding is not required before a court imposes non-minimum, maximum or consecutive prison terms. *See, e.g., State v. Williams,* Muskingum App. No. CT2009–0006, 2009–Ohio–5296, ¶ 19, citing *State v. Hanning,* Licking App.No.2007CA00004, 2007–Ohio–5547, ¶ 9. Subsequent to *Foster,* in a plurality opinion, the Ohio Supreme Court established a two-step procedure for reviewing a felony sentence. *State v. Kalish,* 120 Ohio St.3d 23, 2008–Ohio–4912, 896 N.E.2d 124. The first step is to "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law." *Kalish* at ¶ 4. If this first step is satisfied, the second step requires the trial court's decision be reviewed under an abuse-of-discretion standard. *Id.*

**{¶71}** In the case sub judice, the trial court stated in its written entry that it had considered the purposes of sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors found in R.C. 2929.12. See Sentencing Entry, April 27, 2011. The court thereupon gave appellant the minimum one-year sentence on each of the four counts of aggravated vehicular assault, but ordered them served consecutively.

**{¶72}** Based on our review of the record, and pursuant to *Foster* and *Kalish,* we do not find the trial court acted clearly and convincingly contrary to law or abused its discretion in rendering consecutive sentences under the facts and circumstances of this case.

**{¶73}** Appellant's Seventh Assignment of Error is overruled.

**{¶74}** For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Richland County, Ohio, is hereby affirmed.

By: Wise, J.

Gwin, P. J., and

Farmer, J., concur.

_____

_____

_____

JUDGES

JWW/d 0412

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO                           :

      Plaintiff-Appellee            :

-vs-                               :           JUDGMENT ENTRY

JAMES FRANGELLA                :

      Defendant-Appellant     :           Case No. 11 CA 43

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed.

Costs assessed to appellant.

_____

_____

_____

JUDGES