THE STATE OF OHIO, APPELLEE, *v*. KECK, APPELLANT.

[Cite as *State v. Keck,* 137 Ohio St.3d 550, 2013-Ohio-5160.]

*When a defendant has stipulated to the admissibility and content of a nontestifying analyst's scientific report, the testimony of a witness who relied on that report does not violate the defendant's right to confrontation.*

(No. 2011-0686—Submitted May 7, 2013—Decided November 27, 2013.)

APPEAL from the Court of Appeals for Washington County, No. 09CA50, 2011-Ohio-1643.

_____

SYLLABUS OF THE COURT

When a defendant has stipulated to the admissibility and content of a nontestifying analyst's scientific report, the testimony of a witness who relied on that report does not violate the defendant's right to confrontation.

_____

LANZINGER, J.

{¶ 1} In this case, we are asked to decide whether a defendant's right to confrontation precludes the state from introducing data within a report of a nontestifying forensic analyst through the in-court testimony of a second analyst who did not perform or observe the laboratory tests that resulted in the data. We hold in this case that because the defendant stipulated to the admissibility and content of the nontestifying analyst's report, the testimony of the second analyst, which relied on that report, did not violate the defendant's right to confrontation.

**I. Facts**

{¶ 2} In 2009, a jury found appellant, Daniel Arden Keck II, guilty of four counts of rape in violation of R.C. 2907.02(A)(1)(b), five counts of gross

sexual imposition in violation of R.C. 2907.05(A)(4) and (C)(2), one count of pandering obscenity involving a minor in violation of R.C. 2907.321(A)(1), two counts of pandering obscenity to a minor in violation of R.C. 2907.321(A)(5), four counts of pandering sexually oriented matter involving a minor in violation of R.C. 2907.322(A)(5), five counts of illegal use of a minor in nudity-oriented material or performance in violation of R.C. 2907.323(A)(1), six counts of illegal use of a minor in nudity-oriented material or performance in violation of R.C. 2907.323(A)(3), and two counts of kidnapping in violation of R.C. 2905.01(A)(2), all arising from incidents involving underage boys. Following his convictions, Keck received an aggregate sentence of 71 years of imprisonment.

{¶ 3} Keck appealed, arguing in part that his constitutional right to confrontation was violated when he was denied the opportunity to cross-examine Mark Losko, of the Bureau of Criminal Identification and Investigation ("BCI"), because Losko was not called to testify at trial regarding how he had created DNA profiles for Keck and the alleged victims. Losko had generated DNA profiles, akin to graph readouts, from buccal swabs taken of Keck and the alleged victims in the case. Losko included these DNA profiles in his report, which also contained a comparison between those profiles and DNA found on one piece of physical evidence related to the alleged incidents. However, before the day on which Losko was to testify, the state's attorney informed the trial judge that because Keck's attorney agreed to stipulate to Losko's report, the state would notify Losko that he would not be called to testify. Keck's attorney confirmed that he was stipulating to Losko's report and specified that he stipulated to "both its admissibility and content." Therefore, the DNA profiles generated by Losko were stipulated to and were in evidence.

{¶ 4} At trial, the state called Kristen Slaper, a BCI forensic scientist, who testified as an expert witness in the field of DNA analysis and comparison. She testified that she had used the known DNA profiles generated by Losko to

compare against the DNA profiles that she had generated from samples collected from other evidence in the case. Slaper also described Losko's part in generating the DNA profile: "He doesn't actually do an interpretation of the standard; he just simply prints it out and hands it to the casework analyst."

{¶ 5} Slaper testified that she herself generated the DNA profiles from samples taken from pieces cut from a comforter containing semen stains that had been found in Keck's home. Afterwards, she compared those profiles to the DNA profiles generated by Losko and found that multiple samples contained DNA that matched Keck's DNA profile and some samples contained DNA matching the DNA profiles of two of the alleged victims. The court admitted both Slaper's and Losko's reports into evidence.

{¶ 6} In its decision affirming the judgment of the trial court, the Fourth District Court of Appeals stated that Losko had performed no actual analysis on the DNA profiles upon which Slaper relied, but rather had generated a report containing raw data. 2011-Ohio-1643, ¶ 28. Because Losko's report contained only raw data and because Slaper testified and was cross-examined regarding her own report linking Keck to the incriminating DNA evidence, the Fourth District held that Keck's right to confrontation had been satisfied. The court of appeals accordingly held that no violation of Keck's Sixth Amendment rights had occurred. *Id.* at ¶ 29-30.

{¶ 7} We accepted Keck's discretionary appeal, stayed the briefing schedule, and held the case for the decision in another pending case, *State v. Estrada-Lopez*, case No. 2010-0659. 128 Ohio St.3d 1556, 2011-Ohio-2905, 949 N.E.2d 43. *Estrada-Lopez* was eventually dismissed as having been improvidently accepted, 132 Ohio St.3d 1510, 2012-Ohio-4021, 974 N.E.2d 110, and we vacated the stay in this case and ordered briefing, 133 Ohio St.3d 1488, 2012-Ohio-5459, 978 N.E.2d 908. Now before us is Keck's proposition of law: "The Confrontation Clause prohibits the State from introducing testimonial

statements of a nontestifying forensic analyst through the in-court testimony of a third party who did not perform or observe the laboratory analysis on which the statements are based."

## II. Analysis

**{¶ 8}** Before determining whether the state's failure to call Losko to testify at trial violated Keck's right of confrontation, a review of recent federal decisions provides necessary context.

*Recent federal precedent*

**{¶ 9}** The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." The application of the Confrontation Clause has been a widely litigated issue since the decision in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). In *Crawford*, the United States Supreme Court held that "testimonial statements" of a witness absent from trial can be admitted only when the declarant is unavailable and the defendant has had a prior opportunity to cross-examine. *Id.* at 59. While the *Crawford* court held that defendants are entitled to confront witnesses offering testimonial evidence, the court declined to set forth a comprehensive definition of "testimonial." *Id.* at 68.

**{¶ 10}** Among the growing number of Confrontation Clause decisions since *Crawford* are three involving scientific reports. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009); *Bullcoming v. New Mexico*, ___ U.S. ___, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011); and *Williams v. Illinois*, ___ U.S. ___, 132 S.Ct. 2221, 183 L.Ed.2d 89 (2012). In *Melendez-Diaz,* the court considered whether "certificates of analysis" from a state forensics laboratory stating that a white powdery substance was cocaine were testimonial and thus had been admitted at trial in violation of the defendant's right to confrontation. The defendant objected to the admission of the

certificates on the grounds that *Crawford* required the analysts who had performed the tests on the seized substance to testify in person during trial. *Id.* at 309. The trial court had overruled the objection and admitted the certificates, to which the analysts had sworn before a notary public. *Id.* at 308-309. The United States Supreme Court held that the defendant was entitled to confront the analysts at trial. *Id.* at 329. The fact in question was whether the substance was cocaine, and the certificates were functionally identical to live testimony during trial because they substituted for the examination of a witness on direct examination. *Id.* at 310-311. "At the time of trial, [the defendant] did not know what tests the analysts performed, whether those tests were routine, and whether interpreting their results required the exercise of judgment or the use of skills that the analysts may not have possessed." *Id.* at 320.

{¶ 11} In *Bullcoming*, the defendant was convicted in New Mexico of aggravated driving while intoxicated. *Id.* at 2712. The principal evidence was a forensic laboratory report certifying that the defendant's blood-alcohol concentration was above the legal limit. *Id.* at 2709. The prosecution did not call as a witness the analyst who had signed the certification on the laboratory report and instead called another analyst who was familiar with the laboratory's testing procedures but had not performed or observed the test on the defendant's blood sample. *Id.* The *Bullcoming* majority held that the defendant had the right to confront the certifying analyst and that the surrogate testimony of the other analyst did not satisfy rights provided by the Confrontation Clause. *Id.* at 2710. In so holding, the court stated that the key question in Confrontation Clause cases is whether the evidence sought to be admitted is testimonial in nature: "As a rule, if an out-of-court statement is testimonial in nature, it may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness." *Id.* at 2713. The court noted that the certification described the analyst's

adherence to a precise protocol in performing the test. *Id*. at 2714. Because that report contained information "relating to past events and human actions" not revealed in "raw, machine-produced data," the representations should have been subject to cross-examination. *Id*.

{¶ 12} In the third and most recent case, *Williams*, the court considered whether *Crawford* bars an expert from expressing an opinion based on a DNA profile that was made known to the expert but was not prepared by that expert. *Williams* at 2227. The prosecution called an expert who testified that a DNA profile obtained from a rape victim's vaginal swabs and produced by Cellmark, an outside laboratory, matched a state-police-lab DNA profile generated from a sample of the defendant's blood. *Id*. The defendant argued that his confrontation rights were violated when the expert testified at trial about the DNA profile. *Id*. at 2227-2228. Cellmark's report, which contained the profile, was not admitted into evidence, shown to the fact-finder, quoted or read from during trial, or identified as the source of any opinions the expert expressed. *Id*. at 2230.

{¶ 13} The lead opinion in *Williams* concludes that "this form of expert testimony does not violate the Confrontation Clause because that provision has no application to out-of-court statements that are not offered to prove the truth of the matter asserted." *Id*. at 2228. Furthermore, "[o]ut-of-court statements that are related by the expert solely for the purpose of explaining the assumptions on which that opinion rests are not offered for their truth and thus fall outside the scope of the Confrontation Clause." *Id*. The lead opinion concludes that even if Cellmark's report had been admitted into evidence, there would be no Confrontation Clause violation, because the report was produced before any suspect was identified, was not sought for the purpose of obtaining evidence to be used against the defendant, and was not inherently inculpatory. *Id*. As to this last reason, the lead opinion explains:

When lab technicians are asked to work on the production of a DNA profile, they often have no idea what the consequences of their work will be. In some cases, a DNA profile may provide powerful incriminating evidence against a person who is identified either before or after the profile is completed. But in others, the primary effect of the profile is to exonerate a suspect who has been charged or is under investigation. The technicians who prepare a DNA profile generally have no way of knowing whether it will turn out to be incriminating or exonerating—or both.

*Id.* at 2244. The lead opinion also states that DNA profile reports contain internal safeguards that prevent the reports from being inherently inculpatory and thus characterize them as nontestimonial:

[T]here is no real chance that "sample contamination, sample switching, mislabeling, [or] fraud" could have led Cellmark to produce a DNA profile that falsely matched petitioner. *Post,* at 2275 (Kagan, J., dissenting). * * * [G]iven the complexity of the DNA molecule, it is inconceivable that shoddy lab work would somehow produce a DNA profile that just so happened to have the precise genetic makeup of petitioner, who just so happened to be picked out of a lineup by the victim. The prospect is beyond fanciful.

*Id.*

*Keck's waiver of confrontation*

{¶ 14} Our review of recent federal decisions highlights a critical difference between the factual scenarios found in those decisions and the facts in

the present case. Specifically, none of the federal cases involves a defendant who stipulated to the "admissibility and content" of the underlying report that the testifying analyst relied on.

{¶ 15} By stipulating to the admissibility and content of Losko's report, Keck waived any right to challenge Slaper's reliance on it on the grounds that her testimony violated his right to confrontation. Keck now argues that with respect to Losko's report, Slaper testified as a surrogate witness who presented Losko's findings as fact. Keck states that his right to confrontation was violated when Slaper's testimony and report were admitted without the opportunity to cross-examine Losko, since Losko prepared the data that Slaper used in her analysis. This argument is unavailing in light of the fact that Keck stipulated to the admissibility and content of Losko's report. Keck now argues that he did not stipulate to the portion of Losko's report that was relied upon by Slaper, but rather to a portion in another report. However, the record clearly shows that at the conclusion of court proceedings the day before Losko was to be called to testify, Keck unequivocally stipulated to the admissibility and content of Losko's entire report, which contained DNA profiles of six individuals and of stains on one piece of evidence:

> MR. RINGS [prosecuting attorney]: Tomorrow morning, I've got two witnesses coming from BCI. Attorney Baumgartel [Keck's attorney] has agreed to stipulate the report of a third BCI witness, Mark Losko, so I'm going to go tell him he does not have to come tomorrow. We're going to call Raymond Peoples and Kristen Slaper. They're the two analysts who did the DNA testing.
> * * *
>         * * *

THE COURT: Okay, see you all in the morning. Thank you.

MR. BAUMGARTEL: And that's correct, as far as the stipulation concerned, that is.

THE COURT: What?

MR. BAUMGARTEL: What, I'm just agreeing that I am stipulating to the one report, whose name, I can't remember now.

MR. RINGS: Mark Losko.

MR. BAUMGARTEL: Mark Losko.

THE COURT: Well, make sure you offer it and then at that time, we'll say that it's been agreed that it's admissible.

*Are you stipulating to its admissibility or to its contents*?

MR. RINGS: Just the report, *both its admissibility and content*.

MS. CAUTHORN [prosecuting attorney]: Without him.

MR. RINGS: Without him testifying.

MR. BAUMGARTEL: *Right, I'm not arguing*.

(Emphases added.) Thus, the record shows that Keck's attorney did not limit the stipulation he made to Losko's report. While he did argue the following day that he did not stipulate for purposes of Slaper's testimony, this argument was offered only after the broad stipulation had already obviated any need for the state to call Losko to testify.

{¶ 16} In creating her own report, Slaper used the portion of Losko's report containing the DNA profiles of the six individuals, which she compared to the DNA profiles from stains on three different pieces of evidence. Losko produced only one report in this case, and Keck stipulated to it in its entirety.

Slaper's reliance upon Losko's data in her report and her testimony regarding that data thus does not violate Keck's right to confrontation.

{¶ 17} By stipulating to Losko's report, Keck waived any argument that the report was inadmissible or inaccurate. By stipulating, Keck agreed that the report was admissible and a truthful representation of Losko's findings; he could no longer assert any right to confront Losko. It is especially revealing that, according to the record, the state was prepared and willing to call Losko to testify before Keck agreed to the stipulation. It was thus Keck's own decision that rendered Losko's testimony unnecessary. We cannot hold that Keck's confrontation rights were violated. Furthermore, based on the facts of this case, we decline to address Keck's argument that the Ohio Constitution affords a greater right of confrontation than the federal constitution.

### III. Conclusion

{¶ 18} When a defendant has stipulated to the admissibility and content of a nontestifying analyst's scientific report, the testimony of a witness who relied on that report does not violate the defendant's right to confrontation. When Keck stipulated to Losko's report, he waived any later Confrontation Clause challenge to the use of the report by other witnesses. We accordingly affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER, KENNEDY, and FRENCH, JJ., concur.

O'DONNELL and O'NEILL, JJ., concur in judgment only.

_____

James E. Schneider, Washington County Prosecuting Attorney, and Alison L. Cauthorn and Kevin A. Rings, Assistant Prosecuting Attorneys, for appellee.

Rittgers & Rittgers, Charles H. Rittgers, and Nicholas D. Graman, for appellant.

Michael DeWine, Attorney General, and Michael J. Hendershot, Chief Deputy Solicitor, for amicus curiae, Ohio Attorney General.

_____