[Cite as *State v. Gibbs*, 2019-Ohio-4215.]

STATE OF OHIO      )                    IN THE COURT OF APPEALS
                          )ss:           NINTH JUDICIAL DISTRICT
COUNTY OF LORAIN    )

STATE OF OHIO                         C.A. No.     17CA011116

     Appellee

     v.                               APPEAL FROM JUDGMENT
                                    ENTERED IN THE
DEVANTE M. GIBBS              COURT OF COMMON PLEAS
                                    COUNTY OF LORAIN, OHIO
     Appellant                    CASE No.    15CR092697

DECISION AND JOURNAL ENTRY

Dated: October 15, 2019

---

CALLAHAN, Judge.

{¶1} Appellant, Devante Gibbs, appeals his convictions by the Lorain County Court of Common Pleas. This Court affirms.

I.

{¶2} During September 2013, J.B. left her two-year-old daughter A.C. in the care of her boyfriend, Mr. Gibbs, while she attended classes and went to work. When Mr. Gibbs and A.C. picked her up from school on September 18th, J.B. observed that A.C. seemed unwell, and during the evening, A.C. suffered from diarrhea. J.B. and Mr. Gibbs discussed taking A.C. to the emergency room, but decided not to do so. The next morning, J.B. believed that A.C. appeared to have improved, and she decided to go to work.

{¶3} Mr. Gibbs was alone with A.C. again on September 19th. He contacted J.B. in the middle of the day to tell her that A.C. needed to be taken to the emergency room. The couple drove A.C. to Mercy Hospital ("Mercy") and from there, A.C. was transferred to Rainbow

Babies and Children's Hospital ("Rainbow Babies") by life flight. Her condition was critical: she had suffered cardiac arrest and presented with skin that was pale and gray above the waist, but dark and discolored below the waist. As the pediatric intensive care staff worked to resuscitate A.C. with fluids and her level of perfusion improved, it became apparent that A.C.'s body bore uniform burns below the waistline, as though she had been "dunked * * * in really hot water."

{¶4} Despite the severity of her burns, however, A.C.'s treating physicians at Mercy and Rainbow Babies noted that the burns alone could not account for the critical nature of A.C.'s condition and suspected that A.C. was suffering from sepsis. They also observed that the history that had been provided by J.B. based on information that she received from Mr. Gibbs was inconsistent with the severity of A.C.'s condition. Emergency room personnel at Mercy noted the presence of blood in A.C.'s perineal area, so a Sexual Assault Nurse Examiner ("SANE") examined A.C. in the pediatric intensive care unit at Rainbow Babies and collected samples for a rape kit. The SANE nurse noted red markings in A.C.'s genital region and damage to her hymen that were consistent with blunt force as a result of recent sexual assault.

{¶5} During the next twenty-four hours, A.C.'s abdomen became extremely distended, which impeded the flow of blood to her lower extremities. During emergency surgery, A.C.'s physicians confirmed the presence of a tear in her rectum and significant damage to her bowel. According to her physician, the tear allowed bacteria to pass into A.C.'s bloodstream through the blood vessels in her intestinal wall, leading eventually to sepsis. A.C.'s rectum was also dilated beyond what would normally be expected. The gravity of her condition required surgeons to complete an emergency ileostomy, but the extreme nature of A.C.'s swelling prevented them

from closing the wound after the operation. Had the emergency surgical intervention not proved successful, A.C. would not have survived.

{¶6} A detective from the Lorain County Sheriff's Office interviewed Mr. Gibbs and J.B. at Rainbow Babies on the evening of September 19th. Mr. Gibbs acknowledged that he was the only person with A.C. on September 18th and 19th, but insisted that the only notable event that had occurred was that he found A.C. submerged on her back in a bathtub full of hot water that he had left unattended. The detective interviewed Mr. Gibbs again after A.C.'s surgeons confirmed the presence of the rectal tear. Mr. Gibbs denied that he had sexually abused A.C., but reiterated that he had been the only person with her during the timeframe at issue. Mr. Gibbs was ultimately charged with three counts of kidnapping in violation of R.C. 2905.01(A)(2), R.C. 2905.01(A)(4), and R.C. 2905.01(B)(2), respectively. He was also charged with rape in violation of R.C. 2907.02(A)(1)(b), felonious assault in violation of R.C. 2903.11(A)(1), and two counts of endangering children in violation of R.C. 2919.22(B)(1) and R.C. 2919.22(A).

{¶7} Prior to trial, Mr. Gibbs filed a motion in limine to exclude photographs of A.C. taken during her hospitalization under Evid.R. 403(A), but the written motion did not specify which photographs were at issue. During a pretrial hearing on the motion, Mr. Gibbs' attorney represented that he had flagged the photographs to which he objected for purposes of the hearing, but he did not identify the photographs for the record. The trial court denied the motion, made a "preliminar[y]" determination that they were admissible, and ordered the State to show each photograph to defense counsel before publishing them to the jury in order to allow counsel to object. During trial, defense counsel objected to State's Exhibits 16, 17, 20, and 21-24. At the close of the State's case, however, defense counsel stipulated that each of these photographs would be admitted without objection.

{¶8}    Similarly, Mr. Gibbs filed a motion in limine to exclude laboratory reports related to A.C.'s positive test for chlamydia and any testimony about the lab results as hearsay. When the motion in limine was considered in a pretrial hearing, Mr. Gibbs also maintained that admission of the records would be "a violation of Mr. Gibbs' confrontation right under the Sixth Amendment." The trial court denied the motion in limine, concluding that the lab results were a business record under Evid.R. 803(6). After the State made a passing reference to the lab results during opening statements, however, it was defense counsel who initiated questioning using the lab report, and counsel did not object to any references to the report during trial. As with the photographs, defense counsel stipulated at the close of the State's case that A.C.'s medical records should be admitted in their entirety without objection.

{¶9}    The State dismissed one of the kidnapping charges, and a jury found him guilty of the remaining kidnapping charges, with sexual motivation specifications, and of all of the other charges against him. After merging the relevant convictions for purposes of sentencing, the trial court sentenced Mr. Gibbs to concurrent prison terms of fifteen years to life for the offense of kidnapping in violation of R.C. 2905.01(B)(2) and to life without the possibility of parole for the offense of rape pursuant to R.C. 2907.02(B). Mr. Gibbs filed this appeal.

II.

**ASSIGNMENT OF ERROR NO. 1**

THE TRIAL COURT ERRED BY OVERRULING THE APPELLANT'S MOTION IN LIMINE AND PERMITTING THE APPELLEE TO PRESENT PHOTOGRAPHS TO THE JURY WHEN IT FAILED TO PERFORM THE PROPER BALANCING OF PROBATIVE VALUE AND PREJUDICE AND THE PHOTOGRAPH[S] WERE REPETITIVE AND CUMULATIVE.

**ASSIGNMENT OF ERROR NO. 2**

THE TRIAL COURT ERRED BY PERMITTING TESTIMONY REGARDING LAB RESULTS THAT WERE NOT PROPERLY AUTHENTICATED, WHICH

VIOLATED APPELLANT'S SIXTH AMENDMENT RIGHT TO CONFRONTATION.

{¶10} In his first assignment of error, Mr. Gibbs argues that the trial court erred by admitting State's Exhibits 16, 20, and 21 under Evid.R. 403. In his second assignment of error, Mr. Gibbs argues that the trial court erred by admitting A.C.'s lab report, which indicated that she tested positive for chlamydia, because it violated her confrontation rights under the Sixth Amendment. By stipulating to the admission of these exhibits without objection, however, Mr. Gibbs waived these arguments.

{¶11} "Waiver is the intentional relinquishment or abandonment of a known right." *State v. Pasqualone*, 121 Ohio St.3d 186, 2009-Ohio-315, ¶ 13, citing *United States v. Olano*, 507 U.S. 725, 733 (1993). Unlike forfeiture—which is the failure to preserve an objection— waiver extinguishes even claims of plain error under Crim.R. 52(B). *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 23. "Waiver is generally applicable to all personal rights and privileges, whether contractual, statutory, or constitutional." *State ex rel. Stacy v. Batavia Loc. School Dist. Bd. of Edn.*, 97 Ohio St.3d 269, 273 (2002). The ability to contest the admission of evidence can be waived by stipulation. *See State v. Martynowski*, 9th Dist. Lorain No. 17CA011078, 2017-Ohio-9299, ¶ 17, citing *State v. Keck*, 137 Ohio St.3d 550, 2013-Ohio-5160, ¶ 14–17, and *State v. Townsend*, 9th Dist. Summit No. 23397, 2007-Ohio-4421, ¶ 9. The right to confrontation can also be waived by stipulation. *See Keck* at ¶ 14-17; *Pasqualone* at ¶ 14, 22. *Compare Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 328 (2009) (recognizing that instead of asserting confrontation rights regarding lab reports, counsel will often stipulate to the finding of the report in drug cases).

{¶12} Mr. Gibbs initially objected to the admission of the photographs marked for identification as State's Exhibits 16, 20, and 21 and to the lab report marked for identification as

State's Exhibit 3, pages 254-255, by means of motions in limine and, with respect to the photographs, objections during the course of trial. At the close of the State's case, however counsel stipulated that each of those exhibits would be admitted without objection. Doing so effectively withdrew the previous objections to the exhibits' admissibility and waived Mr. Gibbs' ability to challenge the admissibility of the exhibits. Because waiver does not preserve an appellant's ability to argue even plain error, this Court must overrule Mr. Gibbs' first and second assignments of error on this basis.

{¶13} Mr. Gibbs' first and second assignments of error are overruled.

### ASSIGNMENT OF ERROR NO. 3

THE JURY ERRED IN FINDING APPELLANT GUILTY OF TWO (2) COUNTS OF KIDNAPPING, RAPE, AND FELONIOUS ASSAULT AS THE APPELLEE FAILED TO PRESENT SUFFICIENT EVIDENCE OF GUILT.

{¶14} In his third assignment of error, Mr. Gibbs argues that his convictions are based on insufficient evidence because the State did not produce evidence demonstrating that A.C.'s injuries resulted from sexual activity or that he was the person who caused her injuries. This Court disagrees.

{¶15} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009–Ohio–6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). In reviewing the evidence, we do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to

reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id.*

{¶16} R.C. 2905.01(A)(4), which prohibits kidnapping, provides that "[n]o person * * * in the case of a victim under the age of thirteen * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, * * * [t]o engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will[.]" R.C. 2907.02(A)(1)(b), which prohibits rape, provides that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person."[1] As defined by R.C. 2907.01(C), "sexual activity" is sexual conduct or sexual contact." These terms, in turn, are defined by R.C. 2907.01(A) and (B). "Sexual conduct" includes "the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another." R.C. 2907.01(A). Sexual conduct is completed by "[p]enetration, however slight." *Id.* "Sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶17} The emergency room physician who treated A.C. at Mercy noted the presence of brownish discharge at A.C.'s vagina, which raised concerns that she had been sexually abused. K.H., who conducted the SANE examination at Rainbow, testified that she noticed distinct red

---

[1] Although Mr. Gibbs' brief does not make a distinction, his second conviction for kidnapping and his conviction for felonious assault do not require sexual conduct or contact and are not implicated by his first argument.

markings in the area of A.C.'s genitals, including the area of her hymen. She described the redness as "splotchy," noted that it was a pattern that did not reflect normal problems with hygiene in a young child, and testified that they could not have occurred as a result of medical treatment. K.H. also noted that the type of injuries that she observed were consistent with blunt force applied to the region. A.S., who treated A.C. in the pediatric intensive care unit at Rainbow, testified that A.C.'s surgeons visually confirmed the presence of a tear in her rectum by conducting an anoscopy prior to surgery. A.S. explained that the tear in A.C.'s rectum was consistent with forcible penetration, but inconsistent with normal bodily functions or with medical intervention. A.S. also noted that A.C.'s rectum was dilated.

{¶18} Based on this testimony, the trier of fact could reasonably conclude that someone engaged in sexual conduct with A.C. by inserting a body part or object into her vagina and anus, amounting to penetration that caused trauma to her genital region, tore her rectum, and left her rectum dilated. For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State, and a sufficiency analysis "does not require a court to 'ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt.'" *Jackson v. Virginia*, 443 U.S. 307, 318-319 (1979), quoting *Woodby v. Immigration and Naturalization Serv.*, 385 U.S. 276, 282 (1966). Instead of resolving conflicts in the evidence, we make all reasonable inferences in favor of the State. *See Jenks*, 61 Ohio St.3d at 273. Consequently, Mr. Gibbs' position that there was conflicting evidence regarding the existence of injuries to A.C.'s genital area is irrelevant for purposes of this analysis, and his first argument is not well-taken.

{¶19} Mr. Gibbs has also argued that the State failed to present sufficient evidence that he knowingly inflicted serious physical harm upon A.C. The identity of a perpetrator must be

proved by the State beyond a reasonable doubt. *State v. Flynn*, 9th Dist. Medina No. 06CA0096-M, 2007-Ohio-6210, ¶ 12. As with any element of an offense, identity may be proved by direct or circumstantial evidence, which do not differ with respect to probative value. *See State v. Treesh*, 90 Ohio St.3d 460, 485 (2001), citing *Jenks*, 61 Ohio St.3d 259, at paragraph one of the syllabus.

{¶20} R.C. 2903.11(A)(1), which prohibits felonious assault, provides that "[n]o person shall knowingly * * * [c]ause serious physical harm to another[.]" "Physical harm" includes "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). "Serious physical harm" includes "[a]ny physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5)(e). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶21} A.C. sustained two categories of injury that resulted in serious physical harm. A.C.'s body bore uniform second-degree burns from her waist down that were consistent with being dunked in very hot water. Her burns eventually required treatment by debriding while A.C. was hospitalized in the pediatric intensive care unit. As A.S. also testified, A.C. suffered a tear in her rectum consistent with insertion of an object or body part; the tear, in turn, resulted in the passage of bacteria into her abdominal cavity through the blood vessels in her intestines, and that bacteria led to sepsis. A.C. required emergency life-saving surgery, after which she was hospitalized for several weeks, spending a portion of the time with an unclosed surgical wound due to the massive amount of swelling occasioned by her infection. Mr. Gibbs does not dispute

that A.C. suffered serious physical harm, but he does maintain that the State did not prove that he knowingly caused that harm.

{¶22} A.C.'s mother, J.B., testified that she and A.C. lived in an apartment with Mr. Gibbs during the timeframe in which A.C. sustained her injuries. At the time, J.B. was a student at Lorain County Community College, and she attended classes on Mondays and Wednesdays. On alternate days, she worked. J.B. testified that Mr. Gibbs, who had recently lost his employment, was her sole childcare provider from the time he drove her to work or school until he picked her up in the late afternoon. J.B. testified that other than the weekend of September 12-13th, when Mr. Gibbs' mother cared for A.C. while she and Mr. Gibbs were vacationing, no one else provided childcare for her. She stated that Mr. Gibbs did not tell her that anyone else visited the apartment in her absence. Specifically, J.B. testified that Mr. Gibbs was her source of childcare on September 18, 2013, and September 19, 2013.

{¶23} J.B. recalled that on the evening of September 18th, A.C. "wasn't her normal self." J.B. noted that A.C. was quiet, lacked appetite, and had diarrhea marked by green stool. When A.C. took some food on the morning of September 19th, J.B. decided to leave her in Mr. Gibbs' care again while she went to work. She testified that a few hours later, Mr. Gibbs contacted her to let her know that A.C. needed to be taken to the emergency room. She testified that on the way to the hospital, A.C. did not respond to stimuli and vomited green matter. Mr. Gibbs consistently acknowledged that he was A.C.'s only caregiver while J.B. was at work during the period of time in question.

{¶24} A.S. testified that A.C. had uniform second-degree burns from the waist down and that the color and condition of her burns was consistent with being dunked in very hot water on September 18, 2013. A.S. also explained that the mechanism of the sepsis that A.C. had

developed was a rectal tear that permitted bacteria to enter her bloodstream through blood vessels in the intestinal wall. She opined that the penetrating injury that led to the rectal tear was recent, and that had the injury occurred the weekend of September 13th, A.C. would not have survived. Although K.H. testified that she could not date the injuries to A.C.'s genital area with precision, she noted that microscopic injuries such as those identified with a colposcope in this case typically heal within 48-72 hours. She noted that because she observed blood during her examination on September 19th, she believed the injuries in this case to be more recent.

**{¶25}** The nature of the harm that A.C. suffered demonstrated the nature of the conduct that caused the harm: as the medical professionals who treated A.C. noted, her uniform, diffuse burns were consistent with being dunked up to the waist in very hot water, and the tear to her rectum was consistent with forcible penetration by an object or body part. Given the nature of these actions and A.C.'s tender age at the time they were inflicted, the trier of fact could reasonably conclude beyond a reasonable doubt that the individual who inflicted those injuries acted with awareness that his conduct would cause serious physical harm to A.C. Moreover, based on this evidence, a trier of fact could reasonably conclude that the injuries that caused A.C. to suffer serious physical harm were inflicted during the window of time during which, by his own admission, Mr. Gibbs was her sole caregiver. His second argument is, therefore, not well-taken.

**{¶26}** Mr. Gibbs' third assignment of error is overruled.

**ASSIGNMENT OF ERROR NO. 4**

APPELLANT'S CONVICTIONS OF TWO (2) COUNTS OF KIDNAPPING, RAPE, AND FELONIOUS ASSAULT ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF ARTICLE IV, SECTION 3, OF THE OHIO CONSTITUTION.

{¶27} Mr. Gibbs' fourth assignment of error is that his convictions are against the manifest weight of the evidence. Specifically, Mr. Gibbs maintains that the evidence at trial "weighs heavily in favor of" the conclusion that he was not the individual who inflicted A.C.'s injuries. This Court does not agree.

{¶28} When considering whether a conviction is against the manifest weight of the evidence, this Court must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶29} Mr. Gibbs correctly notes that none of the medical professionals who treated A.C. could identify with precision when her injuries were inflicted. Nonetheless, they did identify ranges of time within which it was likely that A.C. sustained her injuries. A.S. testified that bright red burns were consistent with a recent onset of injury; noted that A.C.'s burns were, indeed, bright red; and stated that her condition was consistent with the injury occurring on September 18, 2013. A.S. rejected the suggestion that the tear to A.C.'s rectum could have been inflicted during the weekend of September 12, 2013, when A.C. was in the care of other individuals, noting that it would have proved fatal before September 19th if that had been the case. K.H. declined to pinpoint a date of injury, but identified a range of 48-72 hours within which it was likely that the injuries to A.C.'s genital area were inflicted, and she noted that the

fresh blood that she observed during her examination indicated that the injuries were more recent.

**{¶30}** Each of these medical professionals, therefore, placed the onset of A.C.'s injuries squarely within the timeframe during which Mr. Gibbs was her only caretaker. Although Mr. Gibbs maintained his innocence when questioned and throughout the trial, he did not identify anyone else who was with A.C. during the relevant timeframe. Mr. Gibbs consistently maintained that A.C. fell into an unattended bathtub full of hot water, where he found her submerged in a supine position. His version of events is contradicted by A.C.'s physical condition: she had uniform second-degree burns from the waist down, but no burns above the waist. He acknowledged that someone committed the acts that are alleged against A.C., and he consistently testified that he was the only person with her at the time. This is not the exceptional case in which the evidence weighs heavily against the jury's conclusion that Mr. Gibbs was guilty.

**{¶31}** Mr. Gibbs' fourth assignment of error is overruled.

III.

**{¶32}** Mr. Gibbs' four assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

 

---

LYNNE S. CALLAHAN
FOR THE COURT

TEODOSIO, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

MICHAEL E. STEPANIK, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and BRIAN P. MURPHY, Assistant Prosecuting Attorney, for Appellee.