[Cite as *State v. Adams*, 2023-Ohio-854.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2022-CA-21 |
| | : | |
| v. | : | Trial Court Case No. 21-CR-0777 |
| | : | |
| LUKE ADAMS | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on March 17, 2023

. . . . . . . . . . .

IAN A. RICHARDSON, Attorney for Appellee

LUCAS W. WILDER, Attorney for Appellant

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Luke Adams appeals from his convictions for failure to comply and receiving stolen property. For the reasons set forth below, we affirm.

## I.      Facts and Procedural Background

{¶ 2} On the morning of August 6, 2020, Ashlee Drugmand made a police report regarding a vehicle stolen from her residence.   The vehicle, a Ford F-150 pickup truck, was a company vehicle which Drugmand used for her job as a sales representative.

{¶ 3} That same morning, Springfield Police Department Officer Marcus Lykins was on routine patrol when he spotted a vehicle matching the description of the stolen truck.   The truck was in the drive-through lane of a fast-food restaurant.   Lykins noted the truck was being driven by a white male wearing a black and white baseball cap. Lykins ran the license plate of the truck and confirmed it was the stolen vehicle.   The driver looked directly at Lykins and then proceeded to pull through the pickup lane without obtaining any food.   The truck then pulled out of the restaurant lot and onto Main Street.

{¶ 4} Lykins followed and activated his overhead lights and siren.   The truck drove away at a high rate of speed and traveled through an area consisting of both businesses and residences.   When the truck failed to stop at a stop sign, Lykins discontinued the pursuit because he felt it was unsafe to proceed.   Lykins then lost sight of the truck.

{¶ 5} After an alert was issued indicating the truck was being tracked by GPS, Lykins was able to locate it at a stop light.   Lykins pulled his cruiser into the intersection in front of the truck.   At that point, the truck maneuvered around the cruiser and took off at a high rate of speed.   Lykins followed, but even after attaining a speed of 65 miles per hour, the truck kept pulling away from him.

{¶ 6} A few moments later, when the truck attempted to turn onto a different road, he lost control; the truck struck a stop sign and then crashed into a building's raised patio.

The truck stopped with one tire resting on the patio. A portion of the fencing around the patio was destroyed and attached to the front bumper of the truck. The driver of the truck exited the vehicle and ran away on foot. Lykins lost sight of the driver when he entered an area with vegetation.

{¶ 7} Following the collision, police noted that the truck's airbag had deployed. They also found a black and white baseball cap in the truck's cabin. Lykins stated that the hat matched the baseball cap he had observed on the driver when he first encountered the truck at the fast-food restaurant. Both the airbag and the hat were sent for DNA testing. After the testing was concluded, Adams was identified as the major contributor for the DNA on the airbag and the sole contributor for the DNA on the baseball cap.

{¶ 8} Adams was indicted on one count of receiving stolen property in violation of R.C. 2913.51(A) and one count of failure to comply in violation of R.C. 2921.333(B) and (C)(5). A jury trial was conducted in February 2022, and Adams was convicted on both counts. The trial court sentenced Adams to prison terms of 36 months for the failure to comply and 12 months for receiving stolen property. Both sentences were ordered to run consecutively and consecutive to a 681-day prison term for violation of post-release control in an unrelated case.

{¶ 9} Adams appeals.

## II. Sufficiency and Manifest Weight of the Evidence

{¶ 10} The first assignment of error asserted by Adams states:

THE JURY'S VERDICTS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 11} Adams contends the State did not provide evidence establishing that he was the driver of the stolen vehicle. He further claims that, even assuming he had been the driver of the vehicle, the State failed to prove he had caused a substantial risk of serious physical harm to persons or property.

{¶ 12} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). In such situations, we apply the test from *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), which states:

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

(Citation omitted.) *Id.* at paragraph two of the syllabus.

{¶ 13} In contrast, "[a] weight of the evidence argument challenges the believability

of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12. In this situation, the " 'court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.   The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 14} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11.   *Accord State v. Winbush*, 2017-Ohio-696, 85 N.E.3d 501, ¶ 58 (2d Dist.); *State v. Putman-Albright*, 2d Dist. Montgomery Nos. 26679, 2016-Ohio-319, ¶ 19.   As a result, "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Citations omitted.) *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

{¶ 15} "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision

whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997).

{¶ 16} Adams was convicted of violating R.C. 2913.51(A), which states that "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." He was also convicted of failure to comply in violation of R.C. 2921.331. That statute states, in pertinent part, that "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." R.C. 2921.331(B). A violation of the statute constitutes a felony of the third degree when "[t]he operation of the motor vehicle by the offender was a proximate cause of serious physical harm to persons or property [or] [t]he operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property." R.C. 2921.331(C)(5)(a)(i) and (ii).

{¶ 17} "Serious physical harm to persons" includes any of the following:

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or

intractable pain.

R.C. 2901.01(5).

{¶ 18} "Serious physical harm to property" is defined as "any physical harm to property" that:

(a) Results in substantial loss to the value of the property or requires a substantial amount of time, effort, or money to repair or replace;

(b) Temporarily prevents the use or enjoyment of the property or substantially interferes with its use or enjoyment for an extended period of time.

R.C. 2901.01(A)(6)

{¶ 19} In this case, the evidence demonstrated that Adams matched Lykins' description of the person driving the stolen vehicle during the pursuits. Significantly, Adams' DNA was on the truck's airbag and the black and white baseball cap found inside the truck cab. The evidence demonstrated the truck did not belong to Adams and that he had no legitimate connection to, or reason for being in, that vehicle.

{¶ 20} The evidence also demonstrated that Lykins had activated both his overhead lights and siren when he initially pulled his cruiser behind the truck. The driver of the truck looked directly at Lykins before driving off at a high rate of speed. The driver did not stop despite being pursued. During the pursuit, the truck was traveling in an area Lykins described as a mix of residential and business. Lykins stated that there was other traffic on the road. Lykins terminated the pursuit after the truck ran a stop sign and he determined the truck driver posed a danger to the public.

{¶ 21} At the onset of the second pursuit, Lykins pulled his cruiser into the intersection where the truck was stopped at a red light. Lykins activated his overhead lights, but the truck drove around him and began to drive away at speeds exceeding 65 miles per hour. The second pursuit continued until the driver of the truck lost control, collided with a stop sign, and ultimately ran onto an elevated fenced patio. The evidence demonstrated that a substantial portion of the fencing surrounding the patio was destroyed and that the patio contained seating for people.

{¶ 22} Based upon the evidence in this record, we cannot say the jury lost its way in concluding Adams had committed the charged offenses. There was competent, credible evidence presented to establish that the truck was stolen, that Adams was the operator of the truck, and that his actions created a substantial risk of serious physical harm to persons and property. Thus, we conclude his claim that the convictions were against the weight of the evidence lacks merit. As a result, there was necessarily sufficient evidence to support the convictions. Accordingly, the first assignment of error is overruled.

### III. Expert Testimony

{¶ 23} The second assignment of error is as follows:

ADAMS WAS DENIED HIS RIGHTS OF DUE PROCESS AND CONFRONTATION WHEN THE TRIAL COURT ALLOWED AN EXPERT WITNESS TO TESTIFY ABOUT DNA TESTS NOT PERFORMED BY HER.

{¶ 24} Relevant to this assignment of error, the State presented the testimony of

forensic scientist Allison Mansius. Mansius testified that she was employed by the Ohio Bureau of Criminal Investigation (BCI) and that she had compared DNA samples drawn from the airbag and baseball cap against a DNA sample drawn from a buccal swab performed upon Adams. She then produced a report stating that Adams' DNA was a match to the DNA found on the two pieces of evidence recovered from the stolen truck. However, Mansius also testified that the DNA sample from the airbag and the baseball cap had been prepared by a different BCI forensic scientist. The State did not present the testimony of the scientist who prepared the DNA samples, and there was no indication the scientist had been unavailable to testify.

{¶ 25} Adams claims his constitutional right to confront witnesses against him was violated when the trial court permitted the State to introduce Mansius' testimony without presenting the in-court testimony of the lab employee who had prepared the DNA samples drawn from the airbag and baseball cap. In support, he cites *Bullcoming v. New Mexico*, 564 U.S. 647, 131 S. Ct. 2705, 180 L. Ed. 2d 610 (2011), which he asserts prohibits an expert from testifying about test results created by another expert's testing and analysis.

{¶ 26} In *Bullcoming*, a report on the blood alcohol concentration of a defendant accused of driving while intoxicated was prepared by a forensic analyst. The prosecutor presented the report through the testimony of another analyst who was familiar with the lab's testing procedures, but who had not personally performed or observed the test of the defendant's blood sample. The Supreme Court held that Bullcoming had a right to confront the forensic laboratory analyst who had certified a lab report indicating that his

blood-alcohol concentration exceeded the legal limit. Thus, the court concluded that the testimony of the surrogate analyst violated the confrontation clause.

{¶ 27} However, in a more recent case, the United States Supreme Court held that the Confrontation Clause had not been violated when a forensic specialist testified she had matched a DNA profile that she had not prepared to a sample obtained from the defendant. *See Williams v. Illinois*, 567 U.S. 50, 132 S.Ct. 2221, 183 L.Ed.2d 89 (2012). In *State v. Barnett*, 2d Dist. Montgomery No. 27660, 2018-Ohio-4133, this court discussed *Williams*, stating:

> The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]" The United States Supreme Court has interpreted this to mean that the admission of an out-of-court statement of a witness who does not appear at trial is prohibited by the Confrontation Clause if the statement is testimonial, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 53-54, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 34. However, "the Confrontation Clause 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.' " *State v. Ali*, 2d Dist. Clark No. 2014 CA 59, 2015-Ohio-1472, ¶ 17, quoting *Crawford* at 60. "[T]he core class of testimonial statements includes statements 'that were made under circumstances

which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " *State v. Syx*, 190 Ohio App.3d 845, 2010-Ohio-5880, 944 N.E.2d 722, ¶ 23 (2d Dist.), quoting *Crawford* at 52.

* * * In *Williams*, a forensic expert testified that a DNA profile was obtained from semen on a rape victim's vaginal swabs and that the DNA profile from the vaginal swabs matched a state-police-lab DNA profile that was generated from a sample of the defendant's blood. *Id.* at 62. The expert further testified that the DNA profile from the vaginal swabs was prepared by an outside laboratory. *Id.* On cross-examination, the expert confirmed that she did not conduct or observe any of the DNA testing on the vaginal swabs and that her testimony relied on the DNA profile produced by the outside laboratory. *Id.* In light of that fact, the defendant argued his confrontation rights were violated when the expert testified about a DNA profile that the expert had not prepared. *Id.* at 62-63. The report from the outside laboratory was not admitted into evidence, read during trial, or shown to the factfinder. *Id.* at 62.

The Court in Williams held that the expert's testimony did not violate the Confrontation Clause "because that provision has no application to out-of-court statements that are not offered to prove the truth of the matter asserted." *Id.* at 57-58; *State v. Keck*, 137 Ohio St.3d 550, 2013-Ohio-5160, 1 N.E.3d 403, ¶ 13. The Court explained that "[w]hen an expert

testifies for the prosecution in a criminal case, the defendant has the opportunity to cross-examine the expert about any statements that are offered for their truth. Out-of-court statements that are related by the expert solely for the purpose of explaining the assumptions on which that opinion rests are not offered for their truth and thus fall outside the scope of the Confrontation Clause." *Williams* at 58; *Keck* at ¶ 13.

*Id.* at ¶ 54-56.

**{¶ 28}** We conclude that this case is closer to the facts in *Williams* than it is to the facts in *Bullcoming*. Like the expert testimony in *Williams*, Mansius provided the testimony and report linking the sample DNA evidence from the airbag and cap to the known DNA profile of Adams. As in *Williams*, the DNA profiles pulled from the airbag and cap were not admitted into evidence but were used by Mansius as an assumption upon which her conclusions were based. And like the State's expert who performed the DNA comparison in *Williams*, Mansius' opinion was subject to cross-examination concerning the underlying assumptions for her opinions and conclusions. Finally, like the outside laboratory technicians in *Williams,* the BCI analyst who performed the DNA profile of the airbag and cap swabs here would not have necessarily known what the consequences of the work would be—whether it would lead to incriminating or exonerating evidence.

**{¶ 29}** Under these circumstances, we find Mansius' testimony was not offered for the truth of the scientific conclusions reached by another analyst in the forensic laboratory. She provided no testimony during her direct examination regarding the results

of the DNA profiles created by the other analyst, nor did she offer an opinion regarding the scientific accuracy of those results. In addition, there is nothing in the record to suggest any report generated by the other BCI analyst was published to the jury during Mansius' testimony.

{¶ 30} We conclude that the trial court did not violate Adams' constitutional right to confrontation by permitting the State to present Mansius' testimony. Therefore, we overrule the second assignment of error.

## IV.    Jury Instruction

{¶ 31} Adams' third assignment of error states:

THE TRIAL COURT ERRED IN GIVING A JURY INSTRUCTION WHICH INFRINGED ON ADAMS' 5TH AMENDMENT RIGHT NOT TO TESTIFY.

{¶ 32} Adams contends the trial court erred in instructing the jury. Specifically, he claims the court violated his constitutional rights when it provided the following instruction to the jury:

The unexplained possession by the defendant of the recently stolen property may give rise to a permissive inference from which you may conclude, beyond a reasonable doubt, that the defendant is guilty of receiving stolen property.

{¶ 33} Adams asserts that this instruction improperly infringed upon his Fifth Amendment right not to testify because it "required him to give a credible explanation of his possession of the property and if he did not, the jury could infer his guilt." Both parties

note Adams did not object to the instruction; thus, we are limited to a plain error review.

{¶ 34} Both the Supreme Court of the United States and the Ohio Supreme Court have held that an inference of guilty knowledge may be drawn from the fact of unexplained possession of recently stolen property. *State v. Arthur*, 42 Ohio St.2d 67, 325 N.E.2d 888 (1975), citing *Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973). Further, the *Barnes* court rejected the claim that such a jury instruction infringes upon the privilege against self-incrimination noting that, as in this case, the trial court specifically instructed the jury that the defendant had a constitutional right not to take the witness stand. That court further rejected the claim that the jury instruction violated due process.

{¶ 35} Because the above-cited instruction comports with the instruction approved in *Barnes*, we find no error, plain or otherwise. Accordingly, the third assignment of error is overruled.

## V. Conclusion

{¶ 36} All of Adams' assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and HUFFMAN, J., concur.